IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALICE JENKINS, | ) | CASE NO. 5:10CV0853 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE OLIVER |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| GININE TRIM, Warden, | ) | |
| | ) | |
| | **)** | REPORT AND RECOMMENDATION |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is the petition of Alice Jenkins ("Jenkins") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on April 22, 2010. Jenkins is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Jenkins*, Case No. 2003-05-1336 (Summit County 2003). For the reasons set forth below, the court should dismiss Jenkins' petition.

I.

The state appellate court reviewing Jenkins' conviction during her initial appeal found the following facts to be relevant to her case:

{¶ 2} On May 23, 2003, the Summit County Grand Jury indicted Defendant with thirty separate criminal charges, the majority related to injurious acts done by Defendant and her co-defendant, Mary Rowles, to Defendant's six minor children. The charges included five counts of kidnapping, in violation of R.C. 2905.01(A)(3), five counts of felonious assault, in violation of R.C. 2903.11(A)(1), six counts of endangering children, a felony of the second degree in violation of R.C. 2919.22(A), five counts of endangering children, a felony of the third degree, in violation of R.C.

> 2919.22(B)(2), five counts of permitting child abuse, in violation of R.C. 2903.15(A), three counts of corrupting another with drugs, in violation of R.C. 2925.02(A)(4), and one count of possession of marijuana, in violation of R.C. 2925.11(A). Defendant pleaded guilty to all thirty counts on October 20, 2003.
>
> {¶ 3} Shortly after she entered her plea, Defendant discovered the existence of a medical condition which might provide some defense to the charges, and she filed a motion to withdraw her guilty plea in November 2003. On December 23, 2003, the morning of the hearing on her motion, Defendant's original medical expert called the court and refused to participate in the case in any manner. Defendant, therefore, presented no evidence at the hearing tending to show whether the alleged medical condition of rumination provided any defense to the charges, and the trial court gave Defendant one week, over the Christmas holiday, in which to gather and present evidence supporting the defense. When Defendant failed to do so, the trial court denied her motion to withdraw her plea, and sentenced her to an aggregate of thirty years in prison.

*State v. Jenkins*, 2005 WL 19439, at *1 (Ohio App. Jan. 5, 2005).

Jenkins timely appealed her conviction and sentence. Jenkins raised two assignments of error in her appeal:

Assignment of Error I:

The trial court erred when it denied Appellant's pre-sentencing motion to withdraw her guilty plea.

A)  The trial court erred when it denied Appellant's motion to vacate because Appellant's plea was not knowingly, intelligently and voluntarily plea of guilty [sic] as it was a product and consequence of ineffective assistance of counsel.

B)  The trial court erred when it denied Appellant's motion to vacate the plea because the hearing on motion to vacate was patently unfair to Defendant and did not address the substance of the motion to vacate -– it did not provide an opportunity for the Defense to either subpoena Dr. Dabari for the hearing, subpoena their own expert who newly and recently evaluated records of the children with an eye on rumination or secure another expert for motion to vacate hearing.

Assignment of Error II:

The trial court erred in sentencing defendant-appellant to more than the "statutory maximum" sentence. The court improperly imposed consecutive prison time and

more than maximum time for Appellant, a first time offender.

On January 5, 2005, the state appellate court overruled Jenkins' assignments of error and affirmed the judgment of the trial court.

Jenkins timely appealed the state appellate court's decision to the Ohio Supreme Court. In her memorandum in support of jurisdiction, Jenkins asserted two issues for review:

1. Did the trial court err when it denied Appellant's pre-sentencing motion to withdraw her guilty plea as shown in the following?

    (A) Did the trial court err when it denied Appellant's motion to vacate because Appellant's plea was not knowingly, intelligently and voluntarily plea of guilty [sic] as it was a product and consequence of ineffective assistance of counsel.

    (B) Did the trial court err when it denied Appellant's motion to vacate the plea because the hearing on motion to vacate was patently unfair to Defendant and did not address the substance of the motion to vacate -– it did not provide an opportunity for the Defense to either subpoena Dr. Dabari for the hearing, subpoena their own expert who newly and recently evaluated records of the children with an eye on rumination or secure another expert for motion to vacate hearing?

2. Did the trial court err in sentencing defendant-appellant to more than the "statutory maximum" sentence? Did the court improperly impose consecutive prison time and more than maximum time for Appellant, a first time offender?

On May 22, 2006, the Ohio Supreme Court reversed the judgment of the state appellate court as to the second issue and remanded the case to the trial court for resentencing consistent with *State v. Foster,* 109 Ohio St.3d 1, 845 N.E.2d 470 (2006).

Meanwhile, Jenkins filed in the trial court on January 18, 2005 a petition for postconviction relief pursuant to Ohio Rev. Code § 2953.21 ("§ 2953.21"). No further action was taken with respect to the petition for post-conviction relief.

Jenkins' trial counsel withdrew on August 4, 2006 from representing Jenkins at her

3

re-sentencing. The trial court appointed an appellate counsel to represent her at re-sentencing. On March 13, 2008 the trial court resentenced Jenkins to the same sentence it had originally imposed.

Jenkins timely appealed her resentencing to the state appellate court. She raised four assignments of error on her second direct appeal:

### FIRST ASSIGNMENT OF ERROR

The trial court's resentencing a defendant to non-minimum, maximum and consecutive prison terms under *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, violates a defendant's rights guaranteed by the Sixth Amendment to the United States Constitution. *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531; *United States v. Booker* (2005), 543 U.S. 220, 125 S.Ct. 738.

### SECOND ASSIGNMENT OF ERROR

Because resentencing under *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, retroactively subjects a defendant to a "statutory maximum sentence" that greatly exceeds the maximum sentence the defendant was subject to when the offenses were committed, *Foster* violates the Due Process Clauses of the Ohio and United States Constitutions.

### THIRD ASSIGNMENT OF ERROR

A common pleas court lacks jurisdiction to impose consecutive sentences for the commission of multiple felonies.

### FOURTH ASSIGNMENT OF ERROR

The Trial Court failed to consider the principles of sentencing , per R.C. 2929.11 and failed to balance the factors of seriousness and recidivism pursuant to R.C. 2929.12.

On December 17, 2008, the state appellate court overruled Jenkins' assignments of error and affirmed the judgment of the trial court.

Jenkins filed a timely notice of appeal to the Ohio Supreme Court. In her memorandum in support of jurisdiction, Jenkins asserted one proposition of law:

> Proposition of Law No. I:  A trial court errs when it retrospectively applies a revised sentencing statute to events occurring before the revision, to the disadvantage of the defendant.  The resulting sentence denies a defendant due process of law, and violates the ex post facto doctrine.  Fourteenth Amendment, Article I, Section X, United States Constitution.

On May 12, 2009, the Ohio Supreme Court denied leave to appeal and dismissed her appeal as not involving any substantial constitutional question.

On April 22, 2010, Jenkins filed in this court a petition for a federal writ of habeas corpus.  Jenkins asserts one ground for relief in her petition:

> **Ground one**:  A trial court errs when it retrospectively applies a revised sentencing statute to events occurring before the revision, to the disadvantage of a defendant.  The resulting sentence denies a defendant due process of law, and violates the ex post facto doctrine.  Fourteenth Amendment, Article I, Section X, United States Constitution.

Respondent filed an Answer/Return of Writ on July 17, 2010.  Doc. No. 7.  Jenkins filed a Traverse on August 8, 2010.  Doc. No. 8.  Thus, the petition is ready for decision.

II

*A.  Jurisdiction*

The Court of Common Pleas of Summit County, Ohio sentenced Jenkins. Jenkins filed her writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of her incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . .  Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Summit County is within this court's geographic jurisdiction.

5

This court has jurisdiction over Jenkins' petition.

*B.     Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. All of Jenkins' claims involve legal issues which can be independently resolved without additional factual inquiry.

*C.     Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

6

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted). Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits. 28 U.S.C. § 2254(b)(2).

Jenkins has no state remedies available for her claim. Because no state remedies remain available to her, Jenkins has exhausted state remedies.

*D. Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Procedural default occurs when a petitioner fails to present fairly to the highest state court her claims in a federal constitutional context. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v.*

7

*Harless*,  459 U.S. 4 (1982).

If the state argues that a petitioner has procedurally defaulted her claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction.  . . . Third, the court must decide whether the state procedural forfeiture is an  "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Respondent does not argue that Jenkins has defaulted her claim.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* at 405-06. "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* at 405. A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano*,

9

237 F.3d 722, 729-31 (6th Cir. 2001). The court will examine Jenkins' ground for relief using the deferential standard applied to state court rulings on the petitioner's claims.

Jenkins argues that resentencing pursuant to *Foster* violated the *Ex Post Facto* Clause and the Due Process Clause.[1] The resulting sentence was, according to Jenkins, higher than the sentence she would have received had she been sentenced properly because she should have been sentenced to minimum and concurrent sentences under the pre-*Foster* sentencing statutes.

Article I, § 10 of the United States Constitution provides that no state shall pass *ex post facto* laws. U.S. Const, Art. I, § 10. The Constitution's bar against *ex post facto* laws, however, does not apply to courts:

> The *Ex Post Facto* Clause, by its own terms, does not apply to courts. Extending the Clause to courts through the rubric of due process . . . would circumvent the clear constitutional text. It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.

*Rogers v. Tennessee,* 532 U.S. 451, 460 (2001).

Although the *Ex Post Facto* Clause does not apply to courts, "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process." *Id.* at 456. In particular, the Supreme Court has found that a court may not unexpectedly and indefensibly construe a criminal statute so as to criminalize conduct which had not been criminal prior to the court's new construction. *See Bouie v. City of Columbia*, 378 U.S. 347 (1964). The Supreme Court has explicitly declined, however, to apply all the protections of the *Ex Post Facto* Clause to courts by way of the due process clause. *Id.*

---

[1] Jenkins does not make an argument for a violation of the Due Process Clause independent of her argument for a violation of the *Ex Post Facto* Clause.

10

at 458-461.

In the present case, Jenkins argues that because the events specified in the indictment occurred before the decision in *Foster*, application of *Foster's* judcially-reconstructed sentencing statute violated her right to be free from *ex post facto* laws. This application of *ex post facto* laws is discussed in *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1963), in which the Supreme Court held that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids."  See also *Rogers v. Tennessee,* 532 U.S. 451, 459 (2001).

Jenkins' argument is distinguished from *Bouie* and is not well-taken for several reasons.  First, the judicial enlargement of a criminal statute in *Bouie* was very different from the alleged enlargement in *Foster*.  In *Bouie,* a South Carolina statute prohibited entry onto land after the posting of notice prohibiting such entry.  Defendants were arrested pursuant to that statute during a lunch counter sit-in for civil rights when they were ordered to leave after being notified that they were trespassing if they remained. The defendants had not been given notice prohibiting their entry to the lunch counter prior to their entry.  Upon appeal, the South Carolina supreme court re-interpreted the relevant statute to prohibit remaining on a property after notice was given as well as entry onto the property.  The Supreme Court struck down the convictions and agreed with the appellants that South Carolina had punished them for conduct that was not criminal at the time they committed it, thus violating the requirement of the due process clause that a criminal statute give fair warning of the conduct which it prohibits. According to the Court, "If a judicial construction of a criminal statute is 'unexpected and

11

indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect." *Bouie*, 378 U.S. at 354 (quoting Hall, GENERAL PRINCIPLES OF CRIMINAL LAW (2d ed. 1960), at 61).

*Foster* differs considerably from *Bouie*. *Foster* did not criminalize any conduct which had not been criminal prior to the decision. Nor did *Foster* increase the maximum penalty that could be imposed for a crime. Rather, *Foster* excised those portions of Ohio's sentencing statute that required judicial findings of fact before a court could sentence a defendant to more than a minimum sentence or to consecutive sentences. *Bouie* does not prohibit this.

Second, Jenkins' position is foreclosed in part by *Dobbert v. Florida*, 432 U.S. 282 (1977). Jenkins contends that Ohio may not sentence her pursuant to a statute that it modified after Jenkins' criminal conduct because this fails to give her fair warning of her potential punishment. As the Eleventh Circuit first pointed out in *United States v. Duncan*, 400 F.3d 1297 (11th Cir. 2006), *Dobbert* contradicts this proposition:

> Whether or not the old statute would in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers. The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability to which the State ascribed to the act of murder.

*Duncan*, 400 F.3d at 1307-08. Similarly, although Ohio's sentencing statutes at the time of Jenkins' criminal acts were unconstitutional, they nevertheless gave her fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts. As the reinterpreted statute did not increase the maximum penalty to which Jenkins was potentially subject, Jenkins

12

cannot say that the state failed to give fair warning of what was prohibited or of the potential penalties to which she would be subject if she committed those acts.

Third, Jenkins' position is contradicted by *United States v. Booker*, 543 U.S. 220 (2005), and its progeny. In *Booker*, the Supreme Court confronted the constitutionality of a federal sentencing statute that resembled Ohio's insofar as it required specified judicial findings of fact for upward departures from a base sentence. The Court found that such mandatory factfinding violated the holding in *Apprendi,* and excised those portions of the statute requiring judicial factfinding before increasing a base sentence. The Supreme Court also allowed sentencing courts to use the previously-mandatory sentencing factors as guidelines that should be considered in sentencing. The Court required other federal courts to apply both parts of its holding--striking the mandatory findings on Sixth Amendment grounds and using the previously-mandatory factors as guidelines--to future cases because applying both holdings in combination best approximated the will of Congress in enacting sentencing reform. *Id.* at 249. Finally, the Court struck those sections of the statute requiring a relatively strict appellate review for departures from mandatory sentencing guidelines and found that the resulting statute implied appellate review under a "reasonableness" standard. *Id.* at 259-60.

When the Ohio Supreme Court determined that Ohio's sentencing statutes violated the holding in *Blakely*, it explicitly turned to *Booker* to cure the statutes' unconstitutionality. *Foster*, 109 Ohio St. 3d at 26-27, 845 N.E.2d at 495-96. Thus, the Ohio Supreme Court excised those portions of the statutes requiring judicial factfinding using certain factors before making upward departures from a base sentence or before sentencing to consecutive sentences. *Id.*, 109 Ohio St. 3d at 28-30, 845 N.E.2d at 497-

98. It also instructed Ohio courts to use the factors enumerated in the statutes as guidelines in making sentencing determinations. *Id.*, 109 Ohio St. 3d at 30, 845 N.E.2d at 498. Sentencing courts were thus free to sentence defendants anywhere within the sentencing ranges set by the Ohio legislature for various crimes or to consecutive sentences, using the previously-mandatory factors as guidelines to determine where in the range a defendant should be sentenced. The resulting statutes, according to the Ohio Supreme Court, best approximated the will of the legislature in passing the sentencing statutes while doing away with the statutes' unconstitutionality. *Id.*

Fourth, although the Sixth Circuit has not ruled on the overall constitutionality of imposing sentences pursuant to *Foster* on defendants whose criminal conduct occurred prior to *Foster's* restructuring of Ohio sentencing laws, it has found that sentencing such defendants to consecutive sentences pursuant to *Foster* does not violate the *Ex Post Facto* or Due Process Clauses. *Hooks v. Sheets*, 603 F.3d 316, 320-21 (6th Cir. 2010). The court's reasoning in *Hooks* parallels the reasoning in *Dobbert* and supports the proposition that a non-minimum sentence imposed on such defendants pursuant to *Foster* also would not violate the *Ex Post Facto* or Due Process Clauses.

A number of federal defendants have alleged that the federal sentencing statutes reshaped by *Booker* violate due process because they subject defendants to *ex post facto* laws. Those challenges have been universally rejected. *See United States v. Scroggins*, 411 F.3d 572, 575-78 (5th Cir. 2005); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005); *United States v. Dupas*, 417 F.3d 1064, 1068-69 (9th Cir. 2005); *United States v. Rines*, 419 F.3d 1104, 1106 (10th Cir. 2006); *Duncan*, 400 F.3d at 1306-08; and *United States v. Alston-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006).

Jenkins makes no argument that distinguishes in any relevant respect Ohio's revised sentencing statutes from the revised federal sentencing statutes upheld by the appellate courts.

Because Jenkins' sentence did not violate due process or the prohibition against *ex post facto* laws, Jenkins' ground for relief should be dismissed.

IV.

For the reasons given above, Jenkins' petition should be dismissed as without merit.

Date: April 25, 2011                    /s/ *Nancy A. Vecchiarelli*
                                         United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**